2024 IL App (2d) 240434-U
No. 2-24-0434
Order filed October 28, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-1387 |
| ROMARIO M. ZURINI SANTOS, | ) ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE KENNEDY delivered the judgment of the court.
Presiding Justice McLaren and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court did not err in denying defendant pretrial release where the trial court's credibility determinations were not against the manifest weight of the evidence and no combination of conditions could mitigate the threat defendant posed to the victim given the lengthy history of domestic violence with the same victim. Affirmed

¶ 2   Defendant, Romario M. Zurini Santos, appeals from the denial of his pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)). As defendant did not file a memorandum, his motion for relief from pretrial detention serves as his argument on appeal. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). For the following reasons we affirm.

¶ 3                                    I. BACKGROUND

¶ 4   On June 29, 2024, defendant was arrested following an incident involving M.R.C., who had been in an on-again-off-again relationship with defendant. Defendant was charged via

complaint with two counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (2) (West 2022)) based on allegations that he bit M.R.C.'s arm.

¶ 5    On June 30, 2024, the State filed a verified petition to deny pretrial release pursuant to section 110-6.1 of the Code. A hearing was held on the State's petition on July 1, 2024.

¶ 6    At the hearing, the State tendered the police synopsis from the incident giving rise to the instant charges, as well as two other police synopses from prior domestic violence incidents involving defendant and the same victim, for which defendant was on probation at the time of the instant offense. Defendant was also on probation for a DUI charge.

¶ 7    According to the police synopsis from the instant case, at around 6:23 a.m. police responded to an incident between defendant and M.R.C. in the area of Duncan Avenue in Elgin under the I-90 overpass. Defendant and M.R.C. had been in an on-and-off relationship and lived together at an apartment on Bent Street in Elgin, according to M.R.C.

¶ 8    M.R.C. claimed that she and defendant were intoxicated and began arguing at their residence on Bent Street. This resulted in defendant biting M.R.C., who had three to four visible bite marks on her right arm. M.R.C. refused to let police photograph her injuries, but they were recorded on multiple officers' body-worn cameras.

¶ 9    M.R.C. then left the residence with defendant, driving a blue Dodge Caliber to Duncan Avenue. Another argument ensued. According to M.R.C., defendant threw a can of beer at her, they got out of the vehicle, and then defendant threw a cooler at her.

¶ 10    Defendant spoke with police and claimed he had been walking on the bike path under the overpass when M.R.C., who happened to be parked in a nearby parking lot, tried to run him over. Defendant tried to stop her by reaching into the vehicle and grabbing the steering wheel, but M.R.C. bit his armpit. Defendant had a visible bitemark on his armpit, which was photographed at

the jail. M.R.C. would neither confirm nor deny whether she bit defendant. Defendant professed not to know how M.R.C. got the bite marks on her arm.

¶ 11    Defendant claimed that he had been drinking at a home on Keep Avenue before walking on the bike path, then later claimed he walked from the residence on Bent Street. He denied being with M.R.C. at Bent Street or ever being in the Dodge Caliber. He also denied that he and M.R.C. lived together.

¶ 12    The other police synopses described incidents from March 12, 2023, and March 10, 2024. The March 12, 2023, synopsis described an incident in which defendant and M.R.C. had been drinking at an apartment on Raymond Street in Elgin. M.R.C.'s daughter returned home, also intoxicated, and began whispering with M.R.C. Defendant believed they were talking about him and struck M.R.C. twice on her left temple with a beer bottle. Police observed a fresh red swollen mark on the side of M.R.C.'s head. M.R.C. also showed police a bite mark near her right tricep and a missing fingernail, which she claimed was from a physical encounter with defendant three weeks prior.

¶ 13    The March 10, 2024, synopsis described an incident in which defendant and M.R.C. had been out drinking together and arrived home at the Bent Street residence in the early morning hours. They were parked outside the residence with defendant in the driver's seat and M.R.C. in the passenger's seat with her feet up on the dashboard. M.R.C. told defendant she wanted him to leave, and he became upset and bit her left shin. She tried to push defendant off her, but he pulled her hair and punched her on the left side of her face and mouth. Police observed that the left side of M.R.C.'s face was puffy and bruised, and there appeared to be dried blood on her mouth. There was also a red mark on her left shin.

¶ 14    The State also offered by way of proffer that following his arrest on March 12, 2023,

defendant was released on a recognizance bond and ordered to not have any contact with M.R.C. As part of his pretrial release, defendant was supposed to set up an intake interview with pretrial services, which was never completed. Defendant was arrested again on September 17, 2023, on domestic violence charges involving M.R.C., and likewise released on a recognizance bond and ordered not to have any contact with M.R.C. Defendant was arrested again on October 24, 2023, on charges of aggravated DUI and released on the condition that he refrain from using alcohol. Defendant was then arrested once more following the domestic violence incident on March 10, 2024. As defendant was found to be drinking during that incident, he was detained until April 17, 2024, when he reached a plea agreement on the DUI charges and the March 12, 2023, and March 10, 2024, domestic violence charges. The September 17, 2023, case was nol-prossed. It is not clear from the record if this was part of the plea agreement. Defendant was sentenced to 24 months' probation and as part of his probation he was to refrain from drinking and not have any contact with M.R.C. Additionally, the State proffered that defendant did not have a valid driver's license at the time of the instant offense.

¶ 15    The trial court granted the State's petition to deny defendant pretrial release. On July 16, 2024, defendant filed a motion for relief. A hearing was held on defendant's motion on July 26, 2024, at which time the trial court denied the motion for relief. Defendant timely appealed.

¶ 16                              II. ANALYSIS

¶ 17    On appeal, defendant argues that the State failed to show by clear and convincing evidence that (1) the proof was evident or presumption great that defendant committed the charged offenses, on the basis that M.R.C.'s statements to the police were unreliable as she was intoxicated and emotional, the trial court relied on uncharged conduct of throwing the cooler and beer can in making its finding, and the trial court's finding that defendant's version of events was incredible

was belied by the bite mark on defendant's armpit; (2) defendant poses a real and present threat to the safety of any person or persons or the community, because M.R.C.'s statements were unreliable; and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, because the State failed to show why a combination of GPS and electronic home monitoring would not mitigate the risk of defendant's release.

¶ 18    On an appeal from an order denying a defendant pretrial release, we review whether the trial court's factual findings were against the manifest weight of the evidence. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A finding is against the manifest weight of the evidence when it is unreasonable. *People v. Sims*, 2022 IL App (2d) 200391, ¶ 72. We review the trial court's ultimate decision regarding pretrial release for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13.

¶ 19    Regarding whether the proof was evident or presumption great that defendant committed the charged offenses, we reject defendant's contention that the trial court erred in relying on the statements of M.R.C. because she was intoxicated at the time. The fact that a witness was intoxicated at the time of the event about which they testify affects the weight to be given their testimony but does not necessarily preclude the trier of fact from finding the witness credible. *People v. Gray*, 2017 IL 120958, ¶ 40. Given the lengthy history of domestic violence between defendant and M.R.C., and the physical evidence of bite marks on M.R.C.'s arm, the trial court's reliance on her statements to police was not against the manifest weight of the evidence.

¶ 20    We likewise reject defendant's assertion that the trial court improperly relied on the uncharged conduct of throwing the cooler and beer can in determining whether defendant committed the charged offenses. In both the trial court's oral pronouncements and written order,

the court discusses M.R.C.'s statement that defendant bit her and that there were bite marks on M.R.C.'s arm. The fact that the trial court also found her credible as to the uncharged conduct of throwing the cooler and beer can does not invalidate its findings as to the charged conduct.

¶ 21    Finally, the trial court did not err in finding that defendant's version of events was incredible. Defendant contends that the bitemark to his armpit corroborates his version of events, and therefore the trial court erred in finding him incredible. While the mark on defendant's armpit appears to be consistent with reaching into the front window of the vehicle and being bitten by M.R.C., this does not preclude the trial court from finding defendant's version of events incredible. As the trial court pointed out, it was not credible that defendant was walking by a parking lot that M.R.C. happened to be parked at and she then decided to run him over. Further, the charged conduct was the biting, which M.R.C. claimed to have occurred at the Bent Street residence, where defendant also claimed to have been in one version of his story. Accordingly, the trial court's finding that the proof was evident or presumption great that defendant committed the charged offenses was not against the manifest weight of the evidence.

¶ 22    Regarding the trial court's finding that defendant poses a real and present threat to the safety of any person or persons or the community, defendant argues that the evidence of dangerousness is unreliable for the same reasons set forth regarding the commission of the offenses. For the reasons previously stated, we similarly reject this argument and the trial court's finding that defendant posed a real and present threat to the safety of M.R.C. was not against the manifest weight of the evidence.

¶ 23    Finally, defendant contends that the State failed to show by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the victim,

because the State failed to show why a combination of GPS and electronic home monitoring would not mitigate the risk of defendant's release.

¶ 24 The trial court considered electronic home monitoring, as well as SCRAM monitoring, and a GPS exclusion area, but rejected all of these. The trial court cited the fact that defendant has repeatedly demonstrated that he will not comply with conditions of pretrial release, particularly as they relate to not having contact with M.R.C. and refraining from alcohol use. In light of this evidence, the State met its burden, and the trial court's finding that no condition or combination of conditions can mitigate the real and present threat to M.R.C. was not against the manifest weight of the evidence.

¶ 25 Accordingly, the trial court's order denying defendant pretrial release was not an abuse of discretion.

¶ 26                                III. CONCLUSION

¶ 27 For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 28 Affirmed.